[Cite as *Campbell v. Campbell*, 2012-Ohio-3059.]

COURT OF APPEALS
MORGAN COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| MARY JANE CAMPBELL | JUDGES:<br>Hon. W. Scott Gwin, P. J. |
| Plaintiff-Appellant | Hon. William B. Hoffman, J.<br>Hon. John W. Wise, J. |
| -vs- | |
| | Case No. 12 AP 0001 |
| EDWINA KAYE CAMPBELL, Executor<br>of the Estate of RAYMOND DEAN<br>CAMPBELL, Deceased | |
| Defendant-Appellee | O P I N I O N |


CHARACTER OF PROCEEDING:       Civil Appeal from the Court of Common
                               Pleas Case No.  11 CV 0028


JUDGMENT:                      Reversed and Remanded


DATE OF JUDGMENT ENTRY:        July 2, 2012


APPEARANCES:

For Plaintiff-Appellant                For Defendant-Appellee

BRADLEY R. WRIGHTSEL                    RICHARD L. ROSS
WRIGHTSEL & WRIGHTSEL                   1800 Pleasant Valley Road
3300 Riverside Drive, Suite 100        Malta, Ohio  43758-9646
Columbus, Ohio  43221

*Wise, J.*

{¶1}   Appellant Mary Jane Campbell appeals the decision of the Court of Common Pleas, Morgan County, which granted summary judgment in favor of Appellee Edwina Kaye Campbell, Executor of the Estate of Raymond Dean Campbell, in a dispute centering on a life insurance provision in appellant's divorce decree. The relevant facts leading to this appeal are as follows.

{¶2}   On February 1, 1987, appellant was granted a divorce from the late Raymond Campbell [hereinafter "Raymond"] in the Morgan County Court of Common Pleas. Appellant and Raymond had two children, both of whom were emancipated prior to the proceedings leading to the within appeal. The divorce decree incorporated an agreement which included the following provision, in pertinent part:[1]

{¶3}   "The Defendant [Raymond] shall maintain life insurance policies equivalent to his existing policies with the Plaintiff [Appellant Mary Jane Campbell] as beneficiary, as may be currently in effect through his employment (in the approximate amount of $80,000.00) for so long as he is obligated to pay child support and alimony *** ."

{¶4}   Divorce Decree, February 1, 1987, at 5.

---

[1]   Appellant consistently refers to the divorce decree as incorporating a separation agreement. This is difficult to verify, as we can locate no written separation agreement attached to the 1987 divorce decree in this case, although we have not been provided with the divorce court file. Instead, the terms of the divorce are all set forth in the decree itself, which states at its outset that the domestic relations court had "take[n] testimony, receive[d] evidence and approve[d] the in-court memorandum agreement of the parties." Decree at 1. Because this assertion of a "separation agreement" by appellant is uncontested by appellee, we assume for the purpose of these proceedings that appellant and Raymond did indeed negotiate and agree in a separation agreement to an $80,000.00 life insurance policy being maintained with appellant as the beneficiary.

**{¶5}** The divorce decree also ordered Raymond to pay alimony of $1,000.00 per month, subject to the court's continuing jurisdiction. The alimony was "terminable upon the death of the Plaintiff [Appellant Mary Jane] or her subsequent remarriage." *Id.* at 3.

**{¶6}** Raymond died in May 2010. By that time, he had married Appellee Edwina Kaye Campbell, who ultimately became the executor of his estate. Appellant Mary Jane Campbell did not remarry prior to Raymond's death.

**{¶7}** At the time of his death, Raymond owned a life insurance policy issued by Transamerica Occidental Life Insurance Company with a death benefit amount of $200,000.00. The policy specifically designated appellant as beneficiary of $50,000.00 of that amount, while designating his spouse at time of death (i.e., appellee) as beneficiary of the remaining $150,000.00.

**{¶8}** On October 4, 2010, appellant filed a claim against Raymond's estate, seeking the full $80,000.00 as per the aforesaid divorce decree. Appellee, as executor, did not challenge the claim for $50,000.00, but rejected appellant's claim for the remaining $30,000.00.

**{¶9}** On February 28, 2011, appellant filed an action against appellee in the Morgan County Court of Common Pleas, General Division, captioned as a "Complaint on Rejected Claim," seeking payment of $80,000.00 and other relief.

**{¶10}** Each side thereafter filed motions for summary judgment. On January 12, 2012, the trial court granted summary judgment in favor of appellee.

**{¶11}** Appellant filed a notice of appeal on February 1, 2012. She herein raises the following sole Assignment of Error:

{¶12} "I.    THE TRIAL COURT ERRED AS A MATTER OF LAW BY IMPROPERLY REFUSING TO ENFORCE THE TERMS OF A DIVORCE DECREE INCORPORATING THE PARTIES' SEPARATION AGREEMENT."

### *Summary Judgment Standard*

{¶13} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 36, 506 N.E.2d 212. An appellate court, as recognized in *Smiddy,* thus reviews summary judgment issues de novo. *Etto v. Alliance Tubular Products Co.*, Stark App.No. 2003CA00202, 2004-Ohio-3486, ¶ 18. Civ.R. 56 provides, in pertinent part: "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor."

I.

{¶14} In her sole Assignment of Error, appellant contends the trial court erred in granting summary judgment in favor of appellee on appellant's action for a rejected

claim against her ex-husband's estate based on the 1987 divorce decree terms. We agree.

**{¶15}** It is well-established that separation agreements are subject to the same rules of construction as other types of contracts. *Brown v. Brown* (1993), 90 Ohio App.3d 781, 784, 630 N.E.2d 763. We must simultaneously recognize, however, that simply because a court, in its divorce decree, adopts the language of a separation agreement, "it does not thereby reduce the status of the decree to that of a mere contract." *See Robrock v. Robrock* (1958), 167 Ohio St. 479, 488, 150 N.E.2d 421 (internal citation omitted), overruled in part by *Nokes v. Nokes* (1976), 47 Ohio St.2d 1, 351 N.E.2d 174. Furthermore, "[a] clear majority of Ohio's appellate courts that have addressed the issue have concluded that an order to maintain life insurance to secure spousal support is within the discretion of the trial court; a court is not required to make the order, but may do so within certain limits." *Vlah v. Vlah*, Geauga App.No. 97-G-2049, 1997 WL 750812 (internal emphasis deleted).

**{¶16}** Our first step in the present appeal is to inspect the life insurance provision language in the separation agreement and try to determine the intent of the parties thereto, in this case appellant and Raymond. Generally, if the terms of a separation agreement are unambiguous, a trial court may not clarify or interpret those terms. *Butcher v. Butcher*, Cuyahoga App.No. 95758, 2011-Ohio-2550, ¶ 11 (citations omitted). In other words, " *** if the language of a written instrument is clear and unambiguous, the interpretation of the instrument is a matter of law and the court must determine the intent of the parties using only the language employed." *Woronka v.*

*Woronka,* Stark App.No. 2010CA00193, 2011–Ohio–498, ¶ 9, citing *Ruthrauff v. Ruthrauff,* Stark App. No. 2009–CA–00191, 2010–Ohio–887.

**{¶17}** As noted previously, the decree in the case sub judice, in pertinent part, required Raymond to maintain life insurance policies, equivalent to his then-existing policies, with appellant as beneficiary, in the "approximate amount" of $80,000.00 "for so long as he is obligated to pay child support and alimony ***." Divorce Decree, February 1, 1987, at 5.

**{¶18}** We thus first observe that the plain language of the decree indicates Raymond's duty to maintain the life insurance policy was conditioned on his obligation to pay child support *and* alimony. One interpretation could be to read the decree's requirement in the conjunctive and possibly conclude that Raymond's duty to keep the life insurance policy in effect had expired prior to the time of his death, as he had long since finished paying child support for the youngest child of the former couple. However, this Court has recognized that although the word "and" is usually interpreted in the conjunctive, we are permitted to interpret it in the disjunctive "if the sense requires it." See *Health Administrators of America, Inc. v. American Medical Security, Inc.*, Delaware App.No. 00CAE04009, 2001 WL 311007, citing *Clagg v. Baycliffs Corp.* (1998), 82 Ohio St.3d 277, 280; R.C. 1.02. In the present context, we must decide if we should read the phrase "child support *and* alimony" as meaning "child support *or* alimony" if the plain meaning of the phrase would result in an unreasonable construction. Taking into consideration appellant's uncontested assertion that the $80,000.00 policy was a term of the divorce which was negotiated and willingly agreed to by both parties, we find it unreasonable that the policy requirement would have

expired as soon as the youngest child reached the age of majority and child support payments ceased. If that were the case, it would not have been necessary to mention the alimony obligation at all in the contractual phrase. It is more reasonable in this context to read the phrase in the disjunctive, such that appellant and Raymond agreed to the $80,000.00 life insurance policy as reinforcement for both the alimony and child support payments, and that the life insurance policy would remain to benefit appellant as long as child support or alimony was in place.

**{¶19}** Our second observation in reading the provision at issue is that the language does not specifically state that the life insurance policy is for the purpose of securing or guaranteeing Raymond's child support and alimony obligations. Appellee-executor, in her response brief, nonetheless wholeheartedly asserts that the $80,000.00 benefit was "clearly to secure" Raymond's said obligations. Appellee's Brief at 5. However, appellant maintains that appellee cannot simply presuppose a purpose for the life insurance obligation when the purpose is not made entirely clear. Appellant cites *Aetna Life Ins. Co. v. Hussey* (1992), 63 Ohio St.3d 640, 644, 590 N.E.2d 724, for the proposition that such a purpose must be "unambiguously communicated" in order for a court to restrict the payment of proceeds from the policy based on satisfaction of that purpose. See Appellant's Brief at 8. Thus, argues appellant, where a decree or separation agreement does not explicitly designate a purpose for a life insurance provision, the purpose of the obligation is irrelevant and would not affect the validity of said provision and obligation to provide the full survivor benefits to the ex-spouse.

**{¶20}** Actually, however, the syllabus of *Aetna* reads: "Where a separation agreement embodied in a divorce decree mandates insurance coverage and

unambiguously designates a purpose for which insurance proceeds are to be used by certain beneficiaries, a constructive trust for that designated purpose is the appropriate remedy to ensure that the proceeds are used for the purpose intended under the agreement." *Id.* Accordingly, despite appellant's reading of *Aetna*, we find the Ohio Supreme Court did not therein necessarily require the purpose for a life insurance provision in a separation agreement or decree to be "unambiguously communicated" in order for a reviewing court to consider the purpose behind the requirement. Rather, the holding in *Aetna* reasons that, if the purpose is indeed unambiguously communicated then the court is required to enforce the stated purpose. Under *Aetna*, we find we are permitted to consider the purpose of the $80,000.00 benefit promise in deciding whether or not to enforce it. In this instance, we find the only reasonable interpretation of the life insurance requirement in the 1987 decree is that it was put in place to secure the child support and/or alimony obligations.

{¶21} Having reached this conclusion, the question remains of whether appellant's cause of action against appellee-executor can still succeed, and in what amount. Pursuant to R.C. 3105.18(B), spousal support ends at death of either party, unless the court orders otherwise. Appellee-executor, asserting that there are no alimony arrearages and that the child support obligation is long past, maintains that the insurance policy no longer had any "purpose" to secure the moment Raymond passed away.

{¶22} However, appellee-executor's position would seem to make most divorce provisions to secure child and/or spousal support via life insurance protection effectively meaningless, should an obligor ex-spouse surreptitiously change or remove

the court-ordered beneficiary or benefit amount. In *Matics v. Matics,* Stark App.No. 1995CA00114, 1996 WL 132244, we held that placement of a life insurance policy provision in a divorce decree was properly within the court's discretion, and that it was not necessary to include a provision for the payments to continue beyond the obligor's death. The Ohio Supreme Court's decision in *Kelly v. Medical Life Ins. Co.* (1987), 31 Ohio St.3d 130 also weighs against appellee's position. In that case, the ex-husband had been ordered in his divorce to name his minor children as beneficiaries on his life insurance "so long as his support obligation exists." *Id.* at 130. The ex-husband died in 1984 without having named the children as beneficiaries on his life insurance issued by Medical Life Insurance Company. *Id.* The Ohio Supreme Court rejected the argument that the ex-husband's obligation was limited to the remaining amount of unpaid child support to accrue until the children were emancipated. The Court stated: "This clause does not limit the *amount* of life insurance proceeds to which appellants would be entitled. It limits only *the period of time* during which they are entitled to be named beneficiaries. Had James Kelly fulfilled his obligation to designate appellants as beneficiaries before he died, the entire policy proceeds would have been payable to appellants without regard to any unpaid balance of child support payments." Id. at 132, emphasis in original.

**{¶23}** Accordingly, in the case sub judice, we hold that because appellant was still entitled to receive alimony payments at the time of Raymond's death, appellant is entitled to the full $80,000.00 benefit as set forth in the divorce decree, and that the estate must be responsible for the $30,000.00 shortfall created by Raymond's prior

decrease of the benefit amount in violation of the divorce decree.[2] The trial court therefore erred in granting summary judgment in favor of appellee-executor.

**{¶24}**  Appellant's sole Assignment of Error is sustained.

**{¶25}** For the reasons stated in the foregoing, the decision of the Court of Common Pleas, Morgan County, is hereby reversed and remanded with directions to enter summary judgment in favor of appellant on her complaint for the rejected claim against the executor.

By: Wise, J.

Gwin, P. J., and

Hoffman, J., concur.

_____

_____

_____

JUDGES

JWW/d 0615

---

[2]  Because this case involves a specific lump sum, we find the constructive trust remedy set forth in *Aetna, supra,* would be inapplicable and unnecessary.

IN THE COURT OF APPEALS FOR MORGAN COUNTY, OHIO
FIFTH APPELLATE DISTRICT


MARY JANE CAMPBELL                          :
                                            :
    Plaintiff-Appellant                  :
                                            :
-vs-                                        :            JUDGMENT ENTRY
                                            :
EDWINA KAYE CAMPBELL, Executor              :
of the Estate of RAYMOND DEAN               :
CAMPBELL, Deceased                          :
                                            :
    Defendant-Appellee                   :            Case No. 12 AP 0001


For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Morgan County, Ohio, is reversed and remanded for further proceedings consistent with this opinion.

Costs assessed to appellee.


_____


_____


_____

JUDGES